# *United States District Court*

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA

FILED by ___ D.C.
MAY 30 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

WILLIAM MACHUCA
a/k/a William Villegas
EDGAR QUIMBAYO

**CRIMINAL COMPLAINT**

CASE NUMBER: OO-4125-SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _from on or about May, 2000_ in _Broward_ county, in the _Southern_ District of _Florida_ and elsewhere, defendants, conspired to distribute cocaine and PWID cocaine,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 846__

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following facts:
<sub>Official Title</sub>

Please see attached affidavit.

Continued on the attached and made a part hereof:  [x] Yes [ ] No

Gregory Giacomino
Special Agent, Drug Enforcement Administration

Sworn to before me, and subscribed in my presence,

May 30, 2000                                            at  Ft. Lauderdale, FL
Date                                                        City and State

LURANA S. SNOW
U.S MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer



## AFFIDAVIT

I, Greg Giacomino, being duly sworn, depose and say as follows:

1. I am a Detective with the city of Margate, Florida Police Department, and have been so employed for approximately four and one half years. For the past year, I have been assigned to the Drug Enforcement Administration's Fort Lauderdale District Office as a Task Force Agent. I am responsible for enforcing the laws concerning narcotics and controlled substance violations, and I am trained and experienced in the methods used by narcotics traffickers to distribute, transport, smuggle and conceal narcotics.

2. The information contained in this affidavit is known to me through personal observation as well as information that has been provided to me by other law enforcement officers. This affidavit also contains information obtained from a reliable confidential informant who has provided information previously which resulted in arrests and the seizure of cocaine. Any references to money in this affidavit are references to United States Currency.

3. On April 21, 2000, a Drug Enforcement Administration Confidential Source, (hereinafter referred to as CS), met William MACHUCA a/k/a William Villegas in Miami, Florida. At that time MACHUCA indicated that he had several sources for cocaine and heroin in Miami, (as well as New York) and wanted to broker a transaction between the CS and one of these sources of supply. The CS told MACHUCA that he/she had buyers for cocaine and heroin that would travel down from the Northeastern United States if the CS could arrange a deal. The CS told MACHUCA that he/she would contact MACHUCA if he/she was prepared to do a transaction in the future.

4. On April 24, 2000, a recorded undercover meeting was conducted between the CS, MACHUCA and a Colombian male (suspected source of supply) in Miami, Florida to

discuss a multi-kilogram cocaine transaction. During this meeting the Colombian male stated "he could get whatever the CS wanted". The CS informed agents that the Colombian male was referring to cocaine and the cost per kilogram was approximately $23,000.00.

5. On April 25, 2000, a recorded undercover meeting was conducted between the CS and MACHUCA in Miami, Florida to further a multi-kilogram narcotics transaction.

6. On April 26, 2000, a recorded undercover meeting was conducted between the CS and MACHUCA in Miami, Florida to discuss the purchase of ten (10) kilograms of cocaine.

7. On April 28, 2000, a recorded telephone conversation was conducted between the CS and MACHUCA, whereby a meeting was established in Miami, Florida on April 28, 2000 at approximately 3:00PM. At approximately 3:17PM surveillance units recorded (audio/video) the CS meet with MACHUCA. At approximately 3:25 PM, MACHUCA entered the CS' vehicle, at which time the CS drove to an undercover vehicle containing a flashroll of $75,000.00 and showed the currency to MACHUCA. The meeting was concluded at approximately 3:30PM.

8. On May 3, 2000, a recorded telephone conversation was conducted between the CS and MACHUCA. The CS informed agents this conversation discussed details of a future narcotics transaction.

9. On May 5, 2000, agents recorded six (6) telephone conversations between the CS and MACHUCA discussing plans to finalize a narcotics transaction. During the course of these conversations, the CS advised agents MACHUCA was "ready to deal". MACHUCA informed the CS not to depart his/her location, that MACHUCA had the "stuff". MACHUCA was later contacted by the CS and MACHUCA informed the CS, he (MACHUCA) just received the "stuff" and would be ready in a little while.

2

10. On May 8, 2000, agents monitored four (4) telephone conversations between the CS and MACHUCA in an attempt to finalize a narcotics transaction from May 3, 2000. During the course of these conversations, the CS advised agents that MACHUCA wanted the CS to remain in Ft. Lauderdale, Florida. These calls were not recorded due to equipment malfunction.

11. On May 9, 2000, agents monitored two (2) recorded telephone conversations between the CS and MACHUCA to discuss completing a narcotics transaction. During the course of these conversations, MACHUCA advised the CS that he (MACHUCA), wanted to introduce the CS to his (MACHUCA's) source of supply. According to the CS, MACHUCA wanted to meet with the CS at the CS' location in Ft. Lauderdale, FL., however this meeting did not occur per agents instructions.

12. On May 26, 2000, the CS advised agents that MACHUCA contacted him/her via telephone and stated he (MACHUCA) was ready. The CS advised agents, MACHUCA had approximately 25 kilograms of cocaine and two kilograms of heroin. On May 26, 2000, agents recorded eleven (11) telephone conversations between the CS and MACHUCA to finalize the narcotics transaction discussed earlier. The CS informed agents these conversations discussed quantity/cost and the exact time the CS and MACHUCA could meet to finalize the transaction. MACHUCA informed the CS he was currently with his (MACHUCA's) source of supply and would meet him/her in Ft. Lauderdale, Florida soon. At approximately 7:45PM, MACHUCA phoned the CS and MACHUCA stated he was north on I-75 enroute to Ft. Lauderdale, FL. Surveillance was established and no further contact was made with MACHUCA. Once it was determined that MACHUCA was not responding to the CS' phone calls, surveillance was terminated.

3

13.     When possible, these phone calls were placed in the presence of an Agent and were recorded. However, due to uncontrollable circumstances, such as the CS being in the presence of others, some of these calls could not be recorded.

14.     On May 27, 2000, at approximately 2:20 PM MACHUCA arrived at the CS's residence. MACHUCA was driving the 1998 black Nissan Pathfinder. MACHUCA advised the CS that he had a sample of heroin for the CS. The CS refused to take the sample of heroin, and further advised MACHUCA that he/she no longer wanted to do business with MACHUCA, as he was too unreliable. MACHUCA became enraged and told the CS that he (CS) had to do the deal because MACHUCA had received control of the drugs from the supplier and could not return them. The CS again refused and MACHUCA left.

15.     At approximately 9:15 PM MACHUCA and a second Colombian male, later identified as Edgar Antonio QUIMBAYO arrived at the CS'S residence. MACHUCA was now driving a purple Toyota Camry and QUIMBAYO was driving the Pathfinder. MACHUCA and QUIMBAYO indicated to the CS that they had 25 kilograms of cocaine and 1 kilogram of heroin in the Pathfinder at that time and wanted the CS to call his/her buyers in Fort Lauderdale. The CS again refused to do the deal at that time. MACHUCA again became angry and demanded the CS arrange to complete the transaction. The CS advised MACHUCA and QUIMBAYO to start traveling toward Fort Lauderdale and await further instruction from the CS. The CS then immediately notified agents of what had transpired at his residence. The CS then began to travel northbound behind MACHUCA and QUIMBAYO. The CS confirmed that MACHUCA was in the CAMRY and QUIMBAYO was in the Pathfinder. The CS advised that the purported drugs were in the Pathfinder.

4

16.     Detectives from the Margate Police Department were utilized to assist with the operation so as to quickly facilitate a surveillance and arrest team. MACHUCA continually called the CS and wanted to confirm directions to where the transaction would take place.

17.     The CS directed MACHUCA to travel toward U.S. 441 (State Road 7) and Atlantic Boulevard in Margate, Florida. Surveillance was then initiated in that area. MACHUCA called the CS from several locations on his way to Margate. MACHUCA advised the CS that he was at the Circle K store on Atlantic Blvd. and U. S. 441. The CS directed him to go to the parking lot on the east side of Atlantic Blvd. MACHUCA then called and said they were at "The PUB". The CS directed him to go to the Denny's restaurant which is in the same parking lot. Surveillance observed the Camry with both MACHUCA and QUIMBAYO inside, driving from the area of The Pub to the Denny's. Surveillance also observed the unoccupied Pathfinder parked in front of the Pub. MACHUCA and QUIMBAYO parked at the DENNY's and went inside. The CS then drove to the Denny's and parked in the lot. The CS was met in the parking lot by MACHUCA and QUIMBAYO. MACHUCA and QUIMBAYO advised the CS that the cocaine was in the Pathfinder. They then directed the CS to get in to the Camry. At that time, QUIMBAYO asked the CS for the money. The CS responded that he/she (CS) wanted to see the cocaine first. QUIMBAYO was upset and began to yell at MACHUCA saying, "I thought you said he had the money ready". MACHUCA and QUIMBAYO then agreed to drive the CS to the Pathfinder and show the CS the cocaine. MACHUCA drove with QUIMBAYO in the front seat and the CS in the backseat. MACHUCA drove the Camry to where the Pathfinder was parked. QUIMBAYO then handed the CS the Pathfinder's key's, and told the CS to check the package in the rear of the vehicle. As the CS was exiting the vehicle QUIMBAYO stated, "Your not going

5

anywhere with that stuff until we see the money". The CS exited the Camry and walked to the Pathfinder. The CS opened the rear of the Pathfinder and observed a large cardboard box which contained approximately 20 kilograms of cocaine. The CS then phoned agents and informed them the "stuff" was all there. The CS returned to the Camry and gave the keys to MACHUCA. The CS, MACHUCA and QUIMBAYO then departed the Pub location and returned to Denny's where agents arrested MACHUCA and QUIMBAYO. The substance inside the cardboard box tested positive in a presumptive field test as cocaine. It was determined by the Margate Police Department that the Camry and the Pathfinder were stolen vehicles.

18.     Agents read QUIMBAYO his Miranda rights, and QUIMBAYO executed his right to counsel.

19.     Agents read MACHUCA his Miranda rights in Spanish, and MACHUCA agreed to speak with agents. MACHUCA stated that he was driving his Toyota Camry and did not know who was driving the Black Nissan Pathfinder. MACHUCA was asked why he had the keys to the Pathfinder on his person and MACHUCA denied having them. MACHUCA did state that on 5-26-2000 he was driving a White Mazda MX6 and returned that vehicle on 5-27-2000 in the early morning and took possession of the Black Nissan Pathfinder. MACHUCA then dropped off the Nissan Pathfinder at a mall in Miami, Florida and departed in his Toyota Camry. MACHUCA stated that he was in the city of Fort Lauderdale visiting a friend. When asked who the friend was, MACHUCA could not reply. MACHUCA stated that he first met QUIMBAYO at Denny's Restaurant where he was arrested. Agents asked MACHUCA why he was in Margate, Florida at 11:30PM and again MACHUCA could not give an answer. Agents terminated interview at this time.

21.  The facts contained in this affidavit are not all the facts regarding this matter known to the affiant, but only those facts necessary to determine probable cause.

22.  Based on the above listed facts there is probable cause to believe that William Arturo MACHUCA and Edgar Antonio QUIMBAYO have violated federal law in that they conspired to distribute and to possess with intent to distribute a controlled substance in violation of 21 USC 846 and 841 (a)(1).

FURTHER AFFIANT SAYETH NOT.

GREG GIACOMINO, TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION

SWORN TO AND SUBSCRIBED
before me this **30** day
of May 2000, at Fort Lauderdale, Florida

LURANA SNOW
UNITED STATES MAGISTRATE JUDGE

7